UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| STEWART TITLE GUARANTY COMPANY, | : | |
|---|---|---|
| Plaintiff | : | |
| v. | : | |
| ISGN FULFILLMENT SERVICES, INC, | : | No. 3:16-cv-01687 |
| Defendant. | : | |

## RULING ON MOTION TO DISMISS

Plaintiff Stewart Title Guaranty Company filed a two-count amended complaint against Defendant ISGN Fulfillment Services, Inc., seeking indemnification for negligence (Count One) and alleging breach of contract (Count Two). ISGN filed a motion to dismiss the amended complaint alleging that the claim for breach of contract is time-barred and that the economic loss doctrine bars the claim for indemnification. (ECF No. 18.) For the reasons stated below, the Court GRANTS ISGN's motion to dismiss.

**I.  Background**

The following factual allegations are taken from the amended complaint and are accepted as true for the purpose of deciding ISGN's motion to dismiss.

A. Factual Background

ISGN "is the successor to or was formerly known as General American Credits, Inc. and Fiserv Fulfillment Services, Inc." (ECF No. 17 at ¶ 1.) "ISGN" refers to ISGN "acting on its own behalf or acting as its predecessor General American Credits, Inc. and/or Fiserv Fulfillment Services, Inc." (*Id.*)

On January 18, 1995, ISGN and Stewart Title entered into a Title Insurance Underwriting Agreement, under which ISGN would issue title insurance policies on behalf of Stewart Title as the underwriter. (ECF No. 17 at 7, ¶ 24.)[1] Specifically, ISGN agreed to "issue title policies according to recognized underwriting practices [and] the rules and instructions given by [Stewart Title.]" (*Id.* at 45.) Further, ISGN was required to ensure that "[e]ach title policy . . . be on a form designated by [Stewart Title] and . . . correctly reflect the status of title as of the date and time of said policy with appropriate exceptions as to liens, defects, encumbrances, and/or objections disclosed by the search and examination of title or known by [ISGN] to exist." (*Id.*) ISGN also agreed to keep in force a $500,000 minimum amount Title Agent Errors and Omissions Policy, with opinions coverage and a deductible provision of no more than $5,000. (*Id.*) Stewart Title agreed to "furnish to [ISGN] all regularly issued title policy, binder, commitment, and endorsement forms necessary for the issuance of title insurance," "maintain a capacity for the research of matters pertaining to title insurance risks," and "pay premium and other similar taxes on the actual cash . . . charged for and remitted to Stewart Title by ISGN." (*Id.*)

On March 3, 2006, ISGN issued a title commitment for 47 Pine Point Road, Norwalk, Connecticut (the "Property"). (ECF No. 17 at ¶ 2.) The title commitment "indicated that the owners of the Property were Manuel J. Perez . . . and Janet Shaw . . . , husband and wife joint tenants." (*Id.* at ¶ 3.) The title commitment was issued for a mortgage closing "by which American Brokers Conduit would lend $1,575,000.00 to be secured by a mortgage on the Property, which mortgage was to be granted by all owners of the property." (*Id.* at ¶ 4.) On May 10, 2006, American Brokers Conduit, the lender, issued Loan Closing Instructions to ISGN. (*Id.* at ¶ 5.) The Loan Closing Instructions provided that all non-borrowing title holders must sign the signature page of the

---

[1] The amended complaint restarts its paragraph numbering in the Second Count (reiterating paragraphs 1-22 of the First Count). Therefore, the page number is to indicate that ¶ 23 is in the Second Count of the amended complaint.

mortgage and stated "[c]onsider this your approval to add names as necessary." (*Id.* at ¶ 6.) On May 11, 2006, ISGN conducted a closing in which American Brokers Conduit lent $1,575,000.00 to Perez. (*Id.* at ¶ 7.) The mortgage obtained by ISGN was signed only by Perez, and not by Shaw. (*Id.* at ¶ 8.) Furthermore, ISGN "issued a short form residential loan policy on behalf of [Stewart Title], which . . . insured the validity of the mortgage granted by . . . Perez." (*Id*. at ¶ 9.)

On May 19, 2009, Stewart Title received a claim under the loan policy that was "based on the fact that the insured mortgage was signed only by [Perez] when at the time of the policy the Property was owned by both [Perez] and [Shaw]." (*Id*. at ¶ 10.) The claim was made "in conjunction with a title search that was performed in preparation for a foreclosure of the mortgage that was granted by [Perez]." (*Id.* at ¶ 12.) Stewart Title's first notice with regard to the claim was on May 19, 2009. (*Id.* at ¶ 14.) This was also the first time Stewart Title learned that ISGN "had not obtained a mortgage from all owners of the property." (*Id*. at ¶ 15.) Stewart Title, in accordance with the title insurance policy issued by ISGN, "retained counsel to defend the validity of the mortgage that was granted only by [Perez] and to also make a claim that the mortgage should be reformed to include [Shaw's] interest in the Property." (*Id*. at ¶ 16.) Perez and Shaw appealed the Superior Court decision that entered judgment reforming the mortgage to include the interest of Shaw. (*Id.* at ¶¶ 17–18.) On December 3, 2013, the Appellate Court reversed the decision of the Superior Court. (*Id.*) On February 17, 2015, the Connecticut Supreme Court dismissed the appeal, finding that its earlier order granting certification to appeal had been improvidently granted. (*Id*. at ¶¶ 19–20.)

Stewart Title and ISGN later entered into a Tolling Agreement in which they agreed that "the running of all statutes of limitation would be tolled and that [ISGN] would not interpose any defenses based on a claim that any statute of limitation expired during the period beginning on

March 23, 2015, and ending on the 'Termination Date' under the Tolling Agreement." (*Id*. at ¶ 22.) On April 1, 2016, Stewart Title settled the claim "being made against plaintiff by its insured, by paying an agreed settlement amount to [Perez] and [Shaw] and by their acceptance and receipt of that payment." (*Id.* at ¶ 28.) Stewart Title further alleges that because ISGN failed to disclose that it had not obtained a mortgage from both owners of the Property, Stewart Title was deprived "the opportunity to resolve that defect prior to the mortgage going in to default and being subject to foreclosure." (*Id*. at 6, ¶ 23.)

B. Claims

Stewart Title brings two claims against ISGN—both based on its failure to obtain a mortgage from both owners of the Property: (1) a claim for indemnification of its "obligat[ion] under its loan policy to defend its insured and to ultimately settle the claim" and its "loss and damages, including the attorney's fees and expenses incurred in defending [p]laintiff's insured and the amounts paid to resolve the claim"; and (2) a claim for breach of contract. (ECF No. 17 at 5–7.) In its claim for indemnification, Stewart Title alleges that ISGN "was negligent in closing the mortgage loan and issuing the title insurance policy in that [ISGN] did not obtain a mortgage from all owners of the property." (*Id*. at 5, ¶ 23.) In its claim for breach of contract, Stewart Title alleges that ISGN violated the underwriting agreement because ISGN did not "conduct the mortgage closing in a sound manner and . . . did not issue the title insurance policy . . . according to recognized underwriting practices." (*Id.* at 7, ¶ 26.) In support of both claims, Stewart Title alleges that ISGN did not disclose to Stewart Title that ISGN "had not obtained a mortgage from all owners of the Property, thereby depriving [Stewart Title] of the opportunity to resolve that defect prior to the mortgage going into default and being subject to foreclosure." (*Id*. at 5, ¶ 23, 7, ¶ 23.)

C. Procedural History

4

On October 10, 2016, ISGN removed the case from the Superior Court of the Judicial District of Hartford. (ECF No. 1.) On November 2, 2016, ISGN filed a motion to dismiss Stewart Title's original complaint. (ECF No. 15.) This Court ordered the plaintiff to file a response to the motion or to file an amended complaint. (ECF No. 16.) Stewart Title chose to file an amended complaint on November 23, 2016. (ECF No. 17.) On December 7, 2016, ISGN filed a motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6), arguing that "the claim for breach of contract (Second Count) is barred by the statute of limitations and that the claim for indemnification (First Count) is barred by the economic loss doctrine and otherwise improperly duplicative of the claim for breach of contract." (ECF No. 18.)

## II.  Standard

Under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under *Twombly*, the Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss. *Id.* at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendant's motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010).  In other words, "a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (internal quotation marks and citation omitted). "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74–75 (2d Cir. 1998).

## III. Discussion

### A. Breach of Contract Claim

ISGN argues that the second count of the amended complaint should be dismissed because the complaint and the documents attached to it make clear that the applicable statute of limitations bars the claim for breach of contract. (ECF No. 18 at 4.) Invoking the six-year statute of limitations applicable to claims for breach of a written contract (Conn. Gen. Stat. § 52-576(a)), ISGN argues that "Stewart Title's claims regarding the closing would have expired on May 11, 2012, and its claims regarding the issuance of the title policy would have expired on May 30, 2012," because the policy attached to the complaint is dated May 30, 2006. (*Id.* at 5; ECF No. 17 at 40.) Therefore, ISGN argues, "Stewart Title's contract claims, filed on September 8, 2016, are more than four years late and should . . . be dismissed." (*Id.*) Stewart Title argues that "[p]rior to the receipt of the claim on or about May 19, 2009, there was no loss or damage for which the plaintiff would have been responsible under the loan policy." (*Id.* at ¶ 13.) Stewart Title also points out that the parties entered into a tolling agreement under which "the running of all statutes of limitation would be tolled and . . . [ISGN] would not interpose any defenses based on a claim that any statute of limitation expired during the period beginning on March 23, 2015 and ending on the 'Termination Date'" under the agreement, (*id.* at ¶ 22) and that this action was commenced before the

6

termination date. (*Id.* at ¶ 22.) As explained below, I agree with ISGN and find that the breach of contract claim accrued in May 2006 and that the statute of limitations expired in May 2012.

Connecticut General Statutes § 52-576(a) provides that "[n]o action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ." The Supreme Court of Connecticut has held that "'[i]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted.'" *Tolbert v. Connecticut Gen. Life Ins. Co.*, 257 Conn. 118, 124 (2001) (quoting *Kennedy v. Johns-Manville Sales Corp.,* 135 Conn. 176, 180 (1948)). "[A]lthough the application of this rule may result in occasional hardship, it is well established that ignorance of the fact that damage has been done does not prevent the running of the statute*,* except where there is something tantamount to a fraudulent concealment of a cause of action." *Tolbert*, 257 Conn. at 125 (internal quotation marks and citations omitted). Furthermore,

> the occurrence of an act or omission—whether it is a breach of contract or of duty—that causes a direct injury, however slight, may start the statute of limitations running against the right to maintain an action even if the plaintiff is not aware of the injury, and even if all resulting damages have not yet occurred; it is sufficient if nominal damages are recoverable for the breach or for the wrong, and where that is the case, it is unimportant that the actual or substantial damage is not discovered or does not occur until later. The fact that the extent of the damages cannot be determined at the time of the wrongful act does not postpone the running of the statute of limitations.

*Rosenfield v. I. David Marder & Assocs., LLC*, 110 Conn. App. 679, 686 (2008) (construing Conn. Gen. Stat. § 52-581, which imposes a 3-year limitations period on any express contract or agreement which is not reduced to writing, using language otherwise identical to § 52-576); *see also News America Marketing In-Store, Inc. v. Marquis*, 86 Conn. App. 527, 535 (2004) ("If a party has suffered no demonstrable harm and, therefore, has no cause of action in tort, that party may be entitled, however, to nominal damages for breach of contract . . . ."); *Kaczynski v. J.*

7

*Videira's Paving, LLC*, No. AANCV054003257, 2008 WL 344655, at *3 (Conn. Sup. Ct. Jan. 23, 2008) (permitting recovery of nominal damages for breach of contract).

The facts of *Tolbert* are illustrative. There, the plaintiff in 1975 entered into a contract with Hartford Federal, whereby Hartford Federal was to procure a mortgage disability insurance policy for her in connection with her obtaining a mortgage from Hartford Federal. *Tolbert*, 257 Conn. at 120. Hartford Federal obtained a disability policy for the plaintiff from Connecticut General Life Insurance Company ("Connecticut General"), effective October 6, 1975. *Id.* After the plaintiff became disabled, Connecticut General began making payments under the policy, but ceased making payments in 1990. *Id.* at 120–21. The plaintiff later sued Hartford Federal for breaching a contractual obligation to procure adequate insurance for her. *Id.* at 120. The plaintiff contended that "because she was not aware that Hartford Federal had breached its contract with her until September, 1990, when her mortgage disability insurance benefits were wrongly terminated by Connecticut General, the statute of limitations did not begin to run until that time." *Id.* at 123. The Connecticut Supreme Court disagreed, finding that "the procurement of inadequate insurance, which constituted the alleged breach of contract, would have resulted in legal damage as soon as it occurred." *Id*. at 125. Specifically, "the injury allegedly caused by Hartford Federal had to have been inflicted at the time Hartford Federal procured a mortgage disability policy for the plaintiff in September, 1975, because that policy was either adequate or inadequate *at that time*." *Tolbert*, 257 Conn. at 125 (emphasis in original). Furthermore, the Connecticut Supreme Court held, "[t]he fact that the plaintiff was not aware of any injury until 1990, while unfortunate, is of no import to the determination of when the alleged breach by Hartford Federal occurred." *Id*. at 126. Therefore, the Supreme Court concluded, "if the contract was breached, it was breached in September, 1975, when the alleged procurement of inadequate insurance occurred." *Id*.

The reasoning of *Tolbert* shows that the same statute of limitations bars the breach of contract claim here. The alleged breaches of contract were the failure of the defendant to obtain "a mortgage from all owners of the property" on May 11, 2006 and the failure to issue a title insurance policy that correctly reflected the joint ownership of the property. (*Id.* at 5, ¶ 24.) Specifically, Stewart Title alleges that ISGN "did not conduct the mortgage closing in a sound manner and . . . (a) did not issue the title insurance policy according to recognized underwriting practices; and (b) the title insurance policy issued by [ISGN] did not correctly reflect the status of title as of the date and time of said policy." (*Id*. at 7, ¶ 26.) Those alleged breaches of contract occurred in May 2006, and Stewart Title could have sued for them at that time, seeking, for example, at least nominal damages and possibly specific performance. Although Stewart Title alleges that "[p]rior to the receipt of the claim on or about May 19, 2009, there was no loss or damage for which the Plaintiff would have been responsible under the loan policy" (ECF No. 17 at ¶ 13), as shown, significant loss or damage need not have materialized for a breach of contract claim to accrue. And some injury did occur, i.e., the creation of a risk of loss to Stewart Title. Indeed, the contract itself treats the creation of such a risk as an injury, citing as an example of a "loss" arising under the contract a "failure to prepare a title policy which shows defects and matters affecting title disclosed in the title search or which should have been disclosed in the title search." (ECF No. 17 at 45.) Stewart Title's ignorance of the alleged breach until May 19, 2009 "is of no import to the determination" of when it occurred. *Tolbert*, 257 Conn. at 126. Stewart Title had six years from the date the mortgage was procured or from the date the policy was issued to file an action against ISGN. Therefore, it could have filed a claim within the statute of limitations if it had brought the suit no later than May 30, 2012. Because this lawsuit was filed in 2016, more than six years "after the right of action accrue[d]," the claim for breach of contract is barred by General Statute § 52-576(a).

> i. *Continuous Course of Conduct*

Stewart Title also alleges in its complaint that there was "a continuing relationship after the closing of the subject mortgage" with ISGN. (ECF No. 17 at 5, ¶ 24.) But in its brief opposing ISGN's motion to dismiss, Stewart Title did not address any tolling doctrines under a "continuing relationship" or any other theory, even after ISGN specifically argued in its brief that the "continuing course of conduct doctrine does not apply." (ECF No. 18–1 at 9.) "When a plaintiff's specific claim is attacked in a motion to dismiss, a plaintiff must rebut the defendant's argument against that claim or it shall be deemed abandoned." *Massaro v. Allingtown Fire District*, No. 3:03-cv-00136 (EBB), 2006 WL 1668008, at *5 (D. Conn June 16, 2006). Therefore, Stewart Title has abandoned any "continuing relationship" or similar tolling theory. Nonetheless, even if it had responded to ISGN's arguments, Stewart Title has not alleged adequate facts to establish that a continuing duty existed that would have tolled the statute of limitations.[2]

B. <u>Count One Claim for Indemnification</u>

ISGN also moves to dismiss the indemnification claim of the amended complaint on the basis of the economic loss doctrine. Under Connecticut law, "the economic loss doctrine bars negligence claims that arise out of and are dependent on breach of contract claims that result only in economic loss." *Ulbrich v. Groth*, 310 Conn. 375, 410 (2013). In *Ulbrich*, the Court found that claims could not be independent where they "are premised on the same alleged conduct with

---

[2] Stewart Title's allegations regarding a "continuing relationship" are conclusory (ECF No. 17 at 5, ¶ 24, 6, ¶ 23) and provide no facts to support the notion that ISGN had a continuing duty to advise Stewart Title of its own negligence with respect to a completed real estate transaction. No such duty is imposed on ISGN by the underwriting agreement either. Finally, the rationale for the continuing course of conduct doctrine would make it a poor fit here: "the [continuing course of conduct] doctrine is generally applicable under circumstances where it may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of action to terminate before allowing the repose section of the statute of limitations to run . . . ." *Giulietti v. Giulietti*, 65 Conn. App. 813, 834 (2001) (alterations omitted). Here, the alleged breach of contract occurred on two specified dates (May 11, 2006 and May 30, 2006, ECF No. 17 at ¶¶ 7–9 and Ex. D) and concerned a particular real estate transaction that was completed in 2006, rather than an ongoing series of acts or omissions.

respect to the same personal property and rely on the same evidence" and where the plaintiff can provide "no theory under which [it] could prevail on [its] negligence . . claim[]" if the breach of contract claim failed. *Id.* at 404–5.

Although previously Connecticut courts distinguished UCC article 2 cases and non-UCC cases for the purposes of the economic loss doctrine (*see Flagg Energy Dev. Corp. v. Gen. Motors Corp.* 244 Conn. 126, 153 (1998))—applying the economic loss doctrine only to UCC article 2 cases—*Ulbrich*'s holding was not so limited. *Ulbrich*, 310 Conn. at 404–7 . Courts addressing this issue since *Ulbrich* have not restricted the economic loss doctrine to UCC cases either. *See Fleming v. Government Employees Ins. Co.*, 86 F. Supp. 3d 102, 108 (D. Conn. 2015) (stating that the court in *Ulbrich* "extended the application of the economic loss doctrine beyond article 2 of the UCC" and finding that the economic loss doctrine barred the plaintiffs' negligent failure-to-settle claim); *see also Drill Master-Eldorado Tool, Inc. v. PCC Specialty Products, Inc.*, 49 F.Supp. 3d 188, 203–204 (D. Conn. 2014) ("[Plaintiff's] negligence claim is based on [defendant's] alleged duty [to timely and properly investigate, characterize, and remediate environmental contamination] under the Asset Purchase Agreement, so it is based on contract liability. Moreover, [plaintiff] has claimed economic damages only as a result of [defendant's] alleged negligence. Thus [plaintiff's] negligence claim is barred by the economic loss doctrine.").

Here, the economic loss doctrine bars the plaintiff's indemnification claim. The facts pled in the amended complaint in support of both the contract claim and the indemnification claim rely on the same conduct. In the first claim, for indemnification, Stewart Title alleges that "Defendant was negligent in closing the mortgage loan and issuing the title insurance policy in that Defendant did not obtain a mortgage from all of the owners of the Property" and "Defendant was further negligent in not disclosing to the Plaintiff that Defendant had not obtained a mortgage from all

owners of the Property, thereby depriving Plaintiff of the opportunity to resolve that defect prior to the mortgage going into default and being subject to foreclosure." (ECF No. 17 at 5 ¶¶ 23–24.) In the second claim, for breach of contract, Stewart Title alleges that "Defendant breached the Underwriting Agreement in that: Defendant did not conduct the mortgage closing in a sound manner and Defendant did not issue the title insurance policy . . . according to recognized underwriting practices; and the title insurance policy issued by Defendant did not correctly reflect the status of title as of the date and time of said policy." (*Id.* at 7, ¶ 26.) Both claims are based on the same conduct—failing to put a co-owner's name on the mortgage and title insurance policy. Even Stewart Title admits that "the underlying facts [are] the same for both claims." (ECF No. 19 at 13.) If Stewart Title failed to prove those facts, it would lose on both claims. *See Ulbrich*, 310 Conn. at 404–5 (economic loss doctrine bars claim where plaintiff can provide "no theory under which [it] could prevail on [its] negligence claim if the breach of contract claim failed on the merits."). And it does not allege that it is owed anything other than economic damages for the indemnification claim. (ECF No. 17 at 5, ¶ 25–26.) Although Stewart Title cites several cases in support of its argument against applying the economic loss doctrine to the indemnification claim, these cases all were decided before *Ulbrich* and so are not controlling. Therefore, the economic loss doctrine bars Stewart Title's indemnification claim, because it depends on the same facts as the breach of contract claim and because the alleged conduct resulted in only economic loss. *Ulbrich*, 310 Conn. at 410.

The policy considerations underlying the economic loss doctrine also support applying it to the plaintiff's indemnification claim. "The rationale for the doctrine is that, because parties to a contract are free to allocate the risks, insure against potential losses, and adjust the contract price as they [deem] most wise courts will not extricate them from their bargain and substitute a

common-law tort remedy." *Ulbrich,* 310 Conn. at 390 n. 14 (citation and internal quotation marks omitted). Further, "[a]n expansion of the economic loss doctrine has also been found to be more compelling in cases where the parties are sophisticated corporations familiar with the type of goods or services rendered, and the consequences likely to result from a failure to perform the contract as promised." *Mastrobattisto, Inc. v. Nutmeg Util. Prod., Inc.*, No. CV156028626, 2016 WL 1165107, at *5–6 (Conn. Super. Ct. Feb. 23, 2016) (internal quotation marks omitted). Here, there are two sophisticated parties who were free to contract and allocate the risks as they saw fit—and, in fact, they did so. In the underwriting agreement, Stewart Title and ISGN stipulated to specific remedies for negligence of the very type that is involved in Stewart Title's claim. (ECF No. 17 at 47.) ("On each such loss due to the fraud or intentional act or omission of [ISGN] or its employees, representatives, or agents, *or due to the negligence thereof*, [ISGN] shall be liable to [Stewart Title] for the entire amount of such loss including, but not limited to, attorneys' fees, litigation expenses, and costs of settlement negotiations.") (emphasis added.) For all these reasons, I find that the economic loss doctrine bars the indemnification claim.

**IV.　Conclusion**

For the reasons stated above, the Court GRANTS Defendant ISGN's motion to dismiss. The clerk is directed to close the case.

　　　IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　Michael P. Shea, U.S.D.J.

Dated:　　　Hartford, Connecticut
　　　　　　August 18, 2017